NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-424

STATE OF LOUISIANA

VERSUS

ROBERT LEE SARGENT

-AKA- ROBERT LEE SARGENT, SR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22641-15
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

CONVICTION AND SENTENCE AFFIRMED.
MOTION TO WITHDRAW GRANTED.

John F. DeRosier
District Attorney
Fourteenth Judicial District Court
Carla S. Sigler
Karen C. McLellan
Assistant District Attorneys
901 Lakeshore Drive, Suite 800
Lake Charles, LA 70601
(337) 437-3400
COUNSEL FOR PLAINTIFF/APPELLEE:
    State of Louisiana

Carey J. Ellis, III
Louisiana Appellate Project
Post Office Box 719
Rayville, LA 71269
(318) 728-2043
COUNSEL FOR DEFENDANT/APPELLANT:
    Robert Lee Sargent

Robert Lee Sargent
Pine-2, Main Prison
Louisiana State Penitentiary
Angola, LA 70712
PRO-SE

**SAUNDERS, Judge.**

Defendant, Robert Lee Sargent, Sr., was indicted on September 17, 2015, for aggravated rape, a violation of La.R.S. 14:42, and for sexual battery, a violation of La.R.S. 14:43.1.[1] The indictment was amended on the morning of trial to state the offenses occurred between September 12, 2009, and January 1, 2015. A jury convicted Defendant on both counts as charged on December 9, 2016. The trial court sentenced him to life imprisonment for aggravated rape and to twenty-five years at hard labor for sexual battery, with both sentences to be served without probation, parole, or suspension of sentence. The sentences are to be served consecutively.

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), alleging no non-frivolous issues exist on which to base an appeal and seeking to withdraw as Defendant's counsel. Defendant filed a pro se brief alleging insufficient evidence and ineffective assistance of counsel. We grant the motion to withdraw, and Defendant's convictions and sentences are affirmed.

**FACTS:**

Defendant committed the aggravated rape and the sexual battery of Z.V., a child under the age of thirteen.[2] The victim was the daughter of Defendant's friends, his next door neighbors.

**ERRORS PATENT and PRO SE ASSIGNMENT OF ERROR NUMBER THREE:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. Additionally, in Pro Se

---

[1]The crime of "aggravated rape" was renamed "first degree rape" effective August 1, 2015. 2015 La. Acts No. 184, § 1; 2015 La. Acts No. 256, § 1. The crimes in this case occurred prior to the statutory changes.

[2]Initials are used to protect the identity of the victim pursuant to La.R.S. 46:1844(W).

Assignment of Error No. 3, Defendant requests a review of the record for errors patent. After reviewing the record, we find that is one error patent.

For Defendant's conviction of sexual battery, the trial court sentenced him to serve twenty-five years without the benefit of parole, probation, or suspension of sentence, but it did not impose the sentence at hard labor as required by La.R.S. 14:43.1(c)(2). Although the court minutes of sentencing and the commitment order both indicate the sentence is to be served at hard labor, the sentencing transcript does not. When there is a conflict with the sentencing transcript, the transcript prevails. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. This court has found when hard labor is required by the applicable statute, the failure to impose a sentence at hard labor renders it illegally lenient. *State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. However, while we note the illegally lenient sentence, we will not correct the error because the issue was not raised and correction is moot given the result of the opinion. *State v. Celestine*, 11-1403 (La.App. 3 Cir. 5/30/12), 91 So.3d 573; *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931, *State v. Dorsey*, 10-1021 (La.App. 3 Cir. 3/9/11), 58 So.3d 637, *writ denied*, 13-2561 (La. 6/13/14), 140 So.3d 1184.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE:

Defendant claims he is innocent, and the evidence at trial was insufficient to convict him. He argues his wife's niece, J.T., manipulated or influenced Z.V. and A.R. to file charges against him. He contends he "had a lot of property, and others either wanted it or were jealous."[3]

---

[3]The record mentions a civil action filed against Defendant by Jill Marie Hanks on behalf of the victim (her daughter), Z.V., docket number 2015-3917 in the Fourteenth Judicial District Court. In that case, the trial court entered a default judgment against Defendant, and the home

2

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The fact finder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction,

---

owned as community property by Defendant and his wife, apparently a co-defendant to these charges, was seized. Defendant also testified his home was "taken away in a civil lawsuit" and "went up for sheriff's sale."

an appellate court must preserve "'the factfinder□s role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother,* 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (third alteration in original).

"Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed . . . [w]hen the victim is under the age of thirteen years." La.R.S. 14:42(A)(4).

Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when . . . . [t]he offender acts without the consent of the victim.

La.R.S. 14:43.1(A)(1).[4]

"It is well-settled that a victim's testimony alone is sufficient to support a verdict as long as that testimony was believed by the trier of fact and that

[4]Subparagraph (A) of the sexual battery statute, La.R.S. 14:43.1, was amended effective August 1, 2015, to read:

Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, *directly or through clothing,* or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, *directly or through clothing . . . .*

2015 La. Acts No. 184, § 1; 2015 La. Acts No. 256, § 1 (italics indicating language added by amendment). The crimes in this case occurred prior to the statutory changes.

testimony does not contain internal contradictions or irreconcilable conflicts with physical evidence[.]" *State v. Hypolite*, 13-1365, p. 12 (La.App. 3 Cir. 5/14/14), 139 So.3d 687, 696, *writ denied*, 14-1242 (La. 1/23/15), 159 So.3d 1056. In *Hypolite*, the victim described what the defendant did, but her testimony was inconsistent with her pre-trial statements. Nevertheless, the jury weighed her testimony and chose to believe it. This court found the evidence sufficient to convict the defendant of aggravated rape and affirmed the conviction.

In the case before us, Defendant has consistently denied the charges against him. A number of witnesses have testified. A summation of those testimonies follows:

*Lieutenant Cinnamon Salvador*

Lieutenant Cinnamon Salvador of the Calcasieu Parish Sheriff's Office was a detective in the sex crimes and child abuse unit at the time of these offenses. She testified the victim's parents filed a report on June 29, 2015, about Defendant touching the victim inappropriately. She scheduled an appointment for the victim to be interviewed at the Children's Advocacy Center (CAC).

At the interview, the victim "disclosed several occasions where [Defendant] had brought her into different rooms at his house and had touched her both with his mouth on her vagina and performed oral sex on her in several different rooms." Lieutenant Salvador testified about the details of each encounter as described to her by the victim. She also spoke to J.T., Defendant's niece by marriage, on the same day of the CAC interview. J.T. told her about incidents involving Defendant when she was very young and also a few days prior to the interview. Later, J.T. brought Lieutenant Salvador a recording in which Defendant admitted having sex with her.

5

Lieutenant Salvador and Lieutenant Mike Primeaux went to Defendant's home with a search warrant but did not execute it because Defendant cooperated and gave them permission to perform the search. Upon arrival, they immediately identified themselves as police officers. Defendant met them outside and began telling them about different civic organizations to which he belonged and about different things he had done in the community. Lieutenant Salvador testified Defendant told them "about how he had lots of things around his house for the neighborhood kids to do and play on." She "thought it odd that he never asked why the police were at his house."

The lieutenants eventually told Defendant why they were there and explained what the victim said had happened. Lieutenant Salvador found a washer and dryer in a bedroom and a pool table in a room above the carport, just as the victim had described. Defendant denied anything had occurred with either Z.V. or J.T., as did his wife, who is charged with being an accessory to these charges concerning Z.V.

J.T. put Lieutenant Salvador in contact with A.R., Defendant's daughter. A.R. gave Lieutenant Salvador a statement in August 2015. A.R. said Defendant had touched her inappropriately when she was very young. The incidents A.R. described were "very similar to the allegations that [Z.V.] had made and that [J.T.] had made from when she was younger . . . ." As a result of the conversations Lieutenant Salvador had with Z.V., J.T., and A.R., she brought charges against Defendant for victimizing all three of them.

A.R. told Lieutenant Salvador Defendant was uncircumcised. Lieutenant Salvador obtained another search warrant that revealed Defendant was in fact uncircumcised. The mothers of A.R. and J.T. confirmed "their daughters had made

6

disclosures to them years before and, for various other reasons, they decided not to report."

*Detective Mike Primeaux*

Detective Primeaux of the Calcasieu Parish Sheriff's Office sex crimes unit assisted Lieutenant Salvador in the investigation. When A.R. testified Defendant was uncircumcised, Detective Primeaux obtained photographs of Defendant's penis. Those photographs in fact showed an uncircumcised male.

*Caitlin Delafield*

Caitlin Delafield testified as the counselor and child forensic interviewer who met with Z.V. Ms. Delafield identified anatomically-correct diagrams completed by the victim showing Defendant touched her breasts, genital area, and buttocks with his mouth, hands, and penis. Ms. Delafield explained statistics show one in four girls and one in six boys are abused before the age of eighteen, and less than two percent of those children falsify allegations of abuse.

*J.T.*

J.T. testified at trial that Defendant and his wife babysat her from the time she was "[a]bout two and-a-half, three" until she was around eleven. During the first circumstance she recalled, Defendant put his hands down her pants. He would also sit her on his lap and grab her buttocks and breasts. He touched her "[a] lot of times on top [of her clothes], a lot of times underneath." J.T. told her mother, who told Defendant and his wife, "and a big family ordeal had come about it." Defendant denied everything, J.T.'s mother believed him, and J.T. continued to go to Defendant's house.

When J.T. was thirty-one, she and her boyfriend fell "on hard times" and moved into Defendant's home. One night in June of 2015, after J.T. had taken medication to make her sleep, Defendant came to her room and raped her. The

next morning, she had no recollection of the event, but she "remembered something happening." However, Defendant made "comments toward [her] . . . telling [her] that it was good, that [she] needed to stop shaving [her] vagina. Told [her] he was in love with [her]." When J.T. confronted Defendant, he admitted he had sex with her. Charges are currently pending against Defendant as a result of that incident.

J.T. became concerned about the victim, Z.V., when she "could just see the way [Defendant] looked at [Z.V.]." One particular day, Defendant "kept talking about how long [Z.V.]'s legs were." J.T. explained, "I looked up at him in his face and he was just smirking and just looking her up and down. And I knew right then." She had seen him look at her the same way. J.T. asked Z.V.'s parents to "ask [Z.V.] if [Defendant]'s ever done anything to make her feel uncomfortable."

*Ron Hanks*

Ron Hanks testified as Z.V.'s stepfather and Defendant's best friend. Mr. Hanks and his wife, Z.V.'s mother, spoke to J.T., who was concerned about Z.V.'s wellbeing. J.T. told them Defendant had molested and raped her. Mr. Hanks and his wife asked Z.V.:

> Is there anybody in the world, in the neighborhood, the ballpark, wherever we've been in our life since we've been together as a family, has anybody ever touched you inappropriate [sic] in the wrong places. And she said – her eyes got real big and she said, why. And we said, we want to know. And she said, [Defendant].

Z.V. told them how Defendant had sent his wife to the store and his daughter to another room while he took Z.V. to his bedroom, "closed and locked the door, pulled her dress up, stuck his mouth on her vagina and his finger in her vagina and rubbed his penis up and down . . . ." Z.V. "was very upset, crying, thinking it was her fault" when she told them. At Lieutenant Salvador's request, Mr. Hanks said nothing to Defendant after he contacted the sheriff's department.

8

*Jill Hanks*

Z.V.'s mother, Jill Hanks, confirmed the testimony of J.T. and Ron Hanks. She said J.T. asked them to question Z.V. about whether anything had ever happened, and Z.V. said Defendant had done something to her. Ms. Hanks never saw anything between Defendant and Z.V., and they had lived in the neighborhood for almost eight years at the time of trial.

*A.R.*

Defendant is A.R.'s biological father. When A.R. was three years old, Defendant pulled down her panties and touched her vagina. This continued until she was thirteen. A.R. described how "[h]e would put me on his lap, hold my hips, and rub me against his erect penis. He would put his mouth on my vagina, and he would make me put my mouth on his penis." A.R. further testified:

> One time he brought me on his motorcycle on a ride out into the woods and he asked me to put my mouth on his penis and I told him no. That's when that stopped. And then he disappeared. We never saw him again for about four years or so. He came back into our lives and I was still under court order to see him every other weekend. The last time it stopped he was in the process with his mouth on my vagina and my stepmom, Donna Sargent, walked in and stopped him. And then I never saw him again until I was 18.

After A.R. graduated from high school, Defendant told her he was sorry for what he had done. Because of her religious beliefs, A.R. forgave him. A.R. also testified, "And then we had an altercation between each other where he then threw me on the ground and was choking me and told me to leave his house and that he was never sorry for anything he had ever done."

Defendant told A.R. he would kill her if she ever told anyone what he did. A.R. recalled Defendant was not circumcised, and he had no problem obtaining an erection. A.R. visited Defendant when he lived in Orangefield, Texas, because of

court-ordered visitation. A.R. begged her mother to let her stop going to his home when she was thirteen.

*Z.V., the victim in this case*

Z.V. thought of J.T. as her "bigger sister." When Z.V. was around eleven years old, her mother asked her if anyone had touched her or made her feel uncomfortable. Z.V. said yes and told her how Defendant put his mouth on her vagina and touched her breasts. Defendant was her dad's best friend.

At the CAC interview, Z.V. told Ms. Delafield the truth about what had happened. Defendant first took Z.V. into a bedroom, pulled down her pants and underwear, and put his mouth on her vagina. He also placed his finger in her vagina. Z.V. believed Defendant had locked the door to the bedroom.

Z.V. also recalled Defendant putting her on the pool table, pulling down her pants and putting his mouth on her vagina again. When she told him, "stop or I'm going to tell[,]" he said, "no you're not." Another time, Z.V. sat on Defendant's lap in his chair. Defendant pulled down her underwear. She saw his penis, and he rubbed it on her vagina. On another occasion, Defendant told Z.V. to sit on his lap, and he rubbed her vagina with his hand, both over and under her clothes.

Defendant also lay down by Z.V. and rubbed her breasts. Once, Defendant was seated next to Z.V. on a golf cart. He pulled down her undershirt and put his mouth on her breast. Around the first of 2015, Z.V. was at a bonfire at Defendant's house when Defendant grabbed her buttocks. That was the last incident she recalled. Z.V. was under the age of thirteen when all the incidents occurred; they began when she was six and-a-half or seven.

*Defendant's testimony*

Defendant stated at trial, "all this is being fabricated and alligated [sic] because of my situation what I have at home. You know, I got a big settlement,

you know, and everything's paid for and I feel there's a lot of jealousy and people wanted what I had, you know, the American dream." He stated Z.V.'s testimony about the incidents "is a lie."

Regarding the incident where J.T. said Defendant raped her, Defendant said J.T.:

> came into our bedroom, come [sic] on my side of the bed, run into a table which has my wife's sewing box on it, and when she bumped into the table it made a bunch of noise. That's what woke the wife up and then when the wife woke up – woke her up, that's when she woke me up because she started hollering at [J.T.] wanting to know what she's doing in our bedroom, and [J.T.] didn't give her an answer. She took off and walked to the bathroom . . . .

Defendant got up and saw a light on in [J.T.'s] bedroom. He saw [J.T.] sitting on the floor of his daughter's bedroom in tears. He sat down to console her, and [J.T.] put her arm around him and began kissing him. J.T. told Defendant to close the door, and they had sexual intercourse. Defendant said, "she took both hands with her fingers and stuck my penis in her because I cannot get an erection because of medical problems." He later said J.T. "pulled [his] pajamas down and put her mouth on [his] penis." Defendant then went back to bed. He testified J.T. was not sleepwalking.

Defendant testified, "I've never touched no [sic] child. I've never harmed no [sic] child." He believed Z.V. filed charges and made allegations against him because J.T. is a manipulator who "can talk people into doing things and she's very good at it." He testified A.R. filed charges against him "to get back at me because we had a falling out one time at the house in Hecker . . . ." A.R. had wanted to go out with friends while Defendant and his wife were babysitting her sick child. A.R. got mad, and when she came home, they argued. Defendant "got up, took my glasses off, and I slapped her across the face and sat her on the floor." When A.R.

11

cursed at him again, Defendant "whipped her butt with [his] open hand . . . ." Defendant denied any inappropriate sexual behavior with A.R.

As a result of taking medication for diabetes, Defendant has been unable to have an erection since 2006. However, when Defendant was asked if J.T. was able to seduce him, he replied, "When we ain't [sic] had sex or stuff in a long time, yeah. It doesn't take much." Nevertheless, he maintained J.T. put his penis, which was "limp as a dish rag," in her vagina because he could not achieve an erection. He admitted he is not circumcised. Defendant testified J.T., A.R., and Z.V. all lied, and he told the truth at trial.

After reviewing all the evidence and testimony, it is clear that the jury had the opportunity to hear all the testimony and evaluate the credibility of each witness. We find that a rational jury could conclude the witnesses, except for Defendant, were truthful. Accordingly, the evidence was sufficient to convict Defendant as charged.

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO:

Defendant contends his appellate counsel is ineffective because he improperly withdrew pursuant to *Anders*, 386 U.S. 738. Defendant claims the record is incomplete without the voir dire portion of the trial. He argues appellate counsel could not make a proper determination that a non-frivolous issue does not exist without the complete record to show whether proper challenges were made or other errors occurred. Defendant concludes the incomplete record compromises his constitutional right to judicial review.

The record in fact does not contain the voir dire transcript. It does, however, include court minutes which indicate the names of prospective jurors and how the trial court dealt with them. The minutes indicate some prospective jurors were excused for hardship and others for cause without objection from counsel on

12

December 7, 2016. Defense counsel challenged only one prospective juror for cause. The trial court denied the challenge, and Defendant did not object. Defendant exercised peremptory challenges regarding that prospective juror and eight others.

Louisiana law provides a defendant contesting the trial court's ruling on a challenge for cause must prove the denial of the challenge was error, and he must show he used a peremptory challenge to remove the juror at issue. *State v. Dorsey*, 10-216 (La. 9/7/11), 74 So.3d 603, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012) (citing *State v. Kang,* 02-2812 (La. 10/21/03), 859 So.2d 649; *State v. Cross,* 93-1189 (La. 6/30/95), 658 So.2d 683; *State v. Robertson,* 92-2660 (La. 1/14/94), 630 So.2d 1278; and *State v. Lee,* 559 So.2d 1310 (La.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431 (1991)). Without that showing, a defendant waives his right to raise the issue on appeal. *Id.* (citing *State v. Blank,* 04-204 (La. 4/11/07), 955 So.2d 90, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494 (2007)).

Here, court minutes show Defendant used a peremptory challenge to remove the only potential juror to whom he objected. He left three peremptory challenges unused. Thus, Defendant not only failed to object to seating any of the other jurors, he was apparently pleased enough with the makeup of the jury to leave three peremptory challenges unused. Further, Defendant made no challenges based on *Batson v Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).

Moreover, the issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective

counsel on appeal, Defendant must satisfy a two-part test. He must first show counsel's performance was deficient and next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

The court minutes recorded during Defendant's jury selection and trial are sufficient to show no errors occurred during the voir dire that violated Defendant's constitutional rights. Thus, the record is sufficient to determine the issue of ineffective assistance of Defendant's appellate counsel. Defendant was not prejudiced in any manner by appellate counsel's failure to obtain and review the voir dire portion of trial. This assignment of error lacks merit.

## *ANDERS* ANALYSIS:

In *State v. Benjamin*, 573 So.2d 528, 531 (La.App. 4 Cir. 1990), the fourth circuit explained the analysis based on *Anders*, 386 U.S. 738:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

While it is not necessary for Defendant's counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit[,]" counsel's *Anders* brief must "'assure the court that the indigent defendant's constitutional rights have not been violated.'" *State v. Jyles*, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983) and *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 108 S.Ct. 1895 (1988)). Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Jyles*, 704 So.2d at 241. Thus, counsel's *Anders* brief must review the procedural history and the evidence presented at trial and provide "'a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.'" *State v. Mouton*, 95-981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177.

Pursuant to *Anders*, 386 U.S. 738, and *Jyles*, 704 So.2d 241, Defendant's appellate counsel filed a brief stating his review of the record revealed no non-frivolous issues for appeal. He noted Defendant was properly charged in the grand jury indictment and was present in court and represented by counsel at all stages of the proceedings. Counsel noted the trial judge had presided over a civil action arising from the allegations in this matter. Defendant initially sought to recuse the trial judge in this matter but later withdrew the request.

The trial court conducted a hearing on other crimes evidence. J.T. testified Defendant, who was married to her aunt, touched her inappropriately from the time she was around three years old until she was around eleven years old. Defendant later raped J.T. when she was thirty-one years old. She first reported the events to

15

the sheriff's department in June of 2015 after she became concerned about the victim in this case. J.T. testified she knew enough about the allegations in this case to say similar things happened to her.

Defendant's daughter, A.R., likewise testified at the hearing that he very often touched her inappropriately when she was around two or three years old until she was around twelve years old. She also testified he performed oral sex on her and attempted sexual intercourse with her. Additionally, Z.V., the victim in this case, testified for purposes of the hearing that Defendant placed his mouth and hand on her vagina and breasts and had her sit on his lap as he had done with the two other witnesses. This occurred from the time she was around five until she was ten or eleven years old.

The trial court granted the State's motion to introduce evidence of the other crimes. It found the State gave the proper notice of its intent to use the evidence, and it showed sufficient similarity among the allegations of the victim and the two other witnesses.

Louisiana Code of Evidence Article 412.2(A) provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

Pursuant to *Anders* and *Benjamin*, this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument, and the transcripts and has confirmed the statements by counsel. Defendant was present and represented by counsel at all crucial stages of the proceedings.

Defendant objected to the admission of evidence of other crimes on grounds he was given untimely notice of the State's intent to use it. However, he made no showing of how the presentation of his defense would have changed had he been notified of the evidence earlier or how he would have rebutted it. He did not show how the trial court abused its discretion in allowing the evidence. Thus, we find that the trial court did not err in allowing the other crimes evidence of similar acts in similar situations. *See State v. Rollins*, 32,686 (La.App. 2 Cir. 12/22/99), 749 So.2d 890, *writ denied*, 00-549 (La. 9/15/00), 768 So.2d 1278.

Appellate counsel likewise reviewed the record of the hearing on other crimes evidence and could find no non-frivolous issues to raise on appeal. Accordingly, we find that Defendant could not present a non-frivolous issue concerning the trial court's ruling.

At trial, defense counsel also objected to the admission of the CAC video interview of the victim and the diagram she completed during the video. The basis of the objection was that counsel had not seen the video prior to trial. However, counsel did not object at the time the video was admitted into evidence. Louisiana Code of Criminal Procedure Article 841 requires a contemporaneous objection to any perceived errors of the trial court; counsel waited until after the video was shown to the jury to tell the trial judge he had no knowledge of it. Accordingly, counsel correctly concluded that Defendant may not offer a non-frivolous argument on appeal concerning the admission of the video into evidence.

17

The trial judge overruled Defendant's objection to introduction of the diagram into evidence because the record showed he had been provided a copy of it in discovery responses. When it was later offered again into evidence, Defendant specifically stated he had no objection to it. No potential issue for appeal exists.

When the victim's mother testified, counsel for the State asked her, "How is [the victim] doing now?" The victim's mother began to explain how she worried about the victim and how the victim "seems to kind of want to push it away . . . ." Defense counsel objected "based upon narrative without a question." The trial court overruled the objection and allowed the victim's mother to explain the victim was "just not her bubbly self . . . ." The victim had also asked "different questions about sexual things" and asked to go to a counselor. This testimony did not prejudice the jury against Defendant in any manner. Thus, Defendant could not make a non-frivolous argument on appeal concerning this issue.

At one point in the trial, Defendant and his counsel raised questions about a search warrant authorizing the taking of photographs of Defendant in jail. The warrant apparently listed an incorrect birth date for Defendant. After discussion with the trial judge, Defendant indicated he was satisfied with the answer.

Our review of the record reveals no issues that would support an assignment of error on appeal beyond the potential issues addressed by counsel and the issues raised in the pro se assignments of error. Defendant's counsel likewise has been unable to identify any non-frivolous issues for appeal. Accordingly, counsel seeks to withdraw. Given the above, appellate counsel's motion to withdraw is granted.

**<u>DECREE</u>:**

Defendant's conviction and sentence are affirmed. Appellate counsel's motion to withdraw is granted.

**CONVICTION AND SENTENCE AFFIRMED. MOTION TO WITHDRAW GRANTED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.